# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.                                                   Case No:   6:17-cv-1385-Orl-37GJK

JEFFREY D. MARTIN, THOMAS L. TEDROW, CHRISTIAN T. TEDROW, TYLER T. TEDROW, BEAUFORT CAPITAL PARTNERS LLC, ROBERT P. MARINO, AM-PAC INVESTMENTS, INC., FORBES INVESTMENT, LTD., FORBES INVESTMENT, LLLP, FCS, LTD., FSC LIMITED, LLC, STERLING LLC n/k/a WATERFORD STERLING LLC,

        Defendants.

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST RELIEF DEFENDANTS AM-PAC INVESTMENTS, INC., FORBES INVESTMENT, LLLP AND FSC LIMITED, LLC (Doc. No. 98)** |
| **FILED:** | **February 1, 2019** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

### I.   BACKGROUND.

On July 27, 2017, the Securities and Exchange Commission ("SEC") filed a Complaint against Defendants for violating securities laws when Defendants orchestrated and executed a

"pump and dump" scheme to profit from sales of the restricted common stock of Mainstream Entertainment, Inc. ("Mainstream") now known as Volt Solar Systems, Inc. ("Volt"). Doc. No. 1. The SEC alleges that Jeffrey D. Martin ("Martin") and Thomas Tedrow ("Tedrow") "schemed to sell restricted shares in the open market as part of a fraudulent pump-and-dump involving false Commission filings, false press releases, false statements to broker-dealers and transfer agents, and the hiring of a stock promoter to engage in matched trades with them and falsely tout Mainstream stock based on materials provided by" Tedrow.  Doc. No. 1 at 2.

The Complaint includes the following allegations against Martin:  Martin violated multiple provisions of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), as well as aiding and abetting certain violations of the Exchange Act, and is also liable as a control person under section 20(a) of the Exchange Act. Doc. No. 1 at 3-4. Martin used Relief Defendants Am-Pac Investments, Inc. ("Am-Pac"), Forbes Investment, LLLP ("Forbes"), and FSC Limited, LLC ("FSC") (collectively "Relief Defendants")[1] as conduits to receive and sell shares of Mainstream, and receive and disburse the sale proceeds of Mainstream stock.  Doc. No. 1 at 3.  Relief Defendants Am-Pac, Forbes, and FSC are all owned, controlled, or solely directed by Martin.  Doc. No. 1 at 6.

Martin took Mainstream, an alleged music production company, public as "an undisclosed shell and blank check company."  Doc. No. 1 at 9.  The scheme involved, in part, a merger with Volt, and issuing shares of Mainstream stock to multiple parties, including Martin's family, without their knowledge.  Doc. No. 1 at 9-10, 14, 17-18.  After positioning Mainstream and Volt as public companies whose shares could be traded, Martin and Tedrow sold their shares, and

---

[1] Relief defendants are nominal defendants that are often joined in litigation to aid in the recovery of relief.  *SEC v. Founding Ptnrs. Capital Mgmt.*, 639 F. Supp. 2d 1291, 1293 (M.D. Fla. 2009) (citing *SEC v. Cavanaugh*, 445 F.3d 105, 109 n.7 (2d Cir. 2006).

Martin the shares of the others in whose names he had issued stock.  Doc. No. 1 at 26-41.  Martin funneled his profits through the Relief Defendants, which also held shares of Mainstream.  Doc. No. 1 at 26-41. The Complaint alleges multiple causes of action against Martin and the other individual Defendants for violations of the Securities Act and the Exchange Act.  Doc. No. 1 at 41-68.  The Complaint alleges a single count against the Relief Defendants for unjust enrichment. Doc. No. 1 at 68-69.  The SEC seeks disgorgement as a remedy against the Relief Defendants for the proceeds from the illegal transactions, as well as prejudgment interest, based on Martin's violations of the Securities Act and Exchange Act.  Doc. No. 1 at 70.

On August 4, 2017, FSC was served via its registered agent.  Doc. No. 28.  On August 31, 2017, Am-Pac was served at its last known business address by service on an individual who resided there and who was an employee of the registered agent.  Doc. No. 55.  Martin, the registered agent for Am-Pac, could not be located in the United States.  Doc. No. 55.  The last known business address for Am-Pac is also the residence of Karen Aalders, a former officer/director of Am-Pac and an employee of Martin's.  Doc. No. 55.  Service was effected on Aalders as a resident and as Martin's employee in Martin's absence.  Doc. No. 55.  On September 1, 2017, Forbes was served via the Secretary of State, Division of Corporations in Florida.  Doc. No. 57 at 2.  On October 6, 2017, a Clerk's Default was entered against FSC.  Doc. No. 52.  On November 30, 2017, a Clerk's Default was entered against Am-Pac.  Doc. No. 68.  On December 5, 2017, a Clerk's Default was entered against Forbes.  Doc. No. 69.  Final Consent Judgments were entered against all Defendants except Martin and the Relief Defendants.  Doc. Nos. 84, 85, 86, 87, 88, 89, 91, and 96.  Martin has not been served.  Doc. No. 96 at 2.

On February 1, 2019, the SEC filed a Motion for Default Judgment against Relief Defendants (the "Motion") pursuant to Federal Rule of Civil Procedure 55(b). Doc. No. 98.  The

SEC filed a Memorandum of Law in support and the Declaration of Stuart Soffian who quantified the funds that are subject to disgorgement from the Relief Defendants. Doc. No. 98-1. Soffian, a fraud analyst contractor with the Miami Regional Office of the SEC, reviewed the bank and brokerage records of the Relief Defendants to establish what shares of Mainstream stock were sold and the proceeds from those stock sales that were funneled through Relief Defendants for Martin's benefit. Doc. No. 98-1 at 12-13. Soffian states that the Relief Defendants sold stock in this scheme and received proceeds therefrom, as follows:

| | | |
|---|---|---|
| Forbes | 653,241 shares | $853,842.28 |
| Am-Pac | 749,667 shares | $52,025.25 |
| FSC | 1,302,766 shares | $36,583.30 |

Doc. No. 98-1 at 13. Soffian also states that Martin wired the proceeds from Forbes and FSC's brokerage accounts to their respective bank accounts. Doc. No. 98-1 at 14. Finally, Soffian calculates prejudgment interest from the date of the last sale of the subject shares through the date of the filing of the Complaint. Doc. No. 98-1 at 14. Soffian uses the same rate used by the Internal Revenue Service to calculate underpayment penalties. Doc. No. 98-1 at 14. Soffian states that the prejudgment interest is as follows:

| | |
|---|---|
| Forbes | $122,805.44 |
| Am-Pac | $6,300.71 |
| FSC | $4,132.72 |

Doc. No. 98-1 at 15.

## II.   APPLICABLE LAW.

The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Before entering default judgment, the Court must ensure that it has jurisdiction over the claims and parties, and that the well-pleaded factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted.

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 39, 361 (11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206). "As a general rule, the court may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits." *DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1129 (M.D. Ala. 2004).

In order to establish a violation of section 17(a) of the Securities Act, the SEC must demonstrate there were misrepresentations or misleading omissions that were material, in the offer or sale of securities, made with scienter. *SEC v. Monterosso*, 756 F.3d 1326, 1333-34 (11th Cir.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2014).  Section 17(a)(2) involves the same requirements but only requires negligence.  *Id.*  A violation of Rule 10b-5 of the Exchange Act requires a material misrepresentation or materially misleading omission, in connection with the buying and selling of securities, made with scienter.  *SEC v. Wealth Strategy Partners, LC*, 2015 U.S. Dist. LEXIS 73068, at *6 (M.D. Fla. June 5, 2015).  "The SEC may establish the requisite scienter for both the 17(a)(1) and the 10(b) claim with a 'showing of knowing misconduct or severe recklessness.'"  *Id.* (quoting *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982)).  Materiality is demonstrated where a "reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action."  *SEC v. Merck Capital LLC*, 483 F.3d 747, 766 (11th Cir. 2007).

"A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person: (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds."  *SEC v. Founding Ptnrs. Capital Mgmt.*, 639 F. Supp. 2d 1291, 1293 (M.D. Fla. 2009) (citing *SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (citations omitted)).  If a person has a legitimate claim to the funds, then that person is immune from being added as a relief defendant.  *FTC v. IAB Mktg. Assocs., LP*, No. 12-61830, 2013 U.S. Dist. LEXIS 190898, at *4 (S.D. Fla. Aug. 21, 2013).

"Disgorgement is an equitable remedy intended to prevent unjust enrichment."  *United States v. Stinson*, 729 F. App'x 891, 899 (11th Cir. 2019) (quoting *SEC v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017); *see SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) (disgorgement is remedial not punitive).  The disgorgement amount requested need only be a "reasonable approximation" of the ill-gotten gains.  *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004).  "All doubts concerning the determination of disgorgements are to be resolved against the defrauding party."  *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996) (quoting

*SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 n.21 (E.D. Mich. 1991)); *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1312 (S.D. Fla. 2007).

An award of prejudgment interest is discretionary, but it is generally imposed to prevent those liable under the securities law from enjoying any benefit from ill-gotten gain. *SEC v. Huff*, 758 F. Supp. 2d 1288, 1363 (S.D. Fla. 2010). Proof of a defendant's scienter can justify such an award. *Id.* Prejudgment interest can be awarded against relief defendants. *See SEC v. Lane*, No. 6:07-cv-1920, 2009 U.S. Dist. LEXIS 122126, at *7-8 (M.D. Fla. Dec. 17, 2009). Courts have, without controversy, used the IRS underpayment rate as the proper measure of prejudgment interest. *SEC v. Lauer*, 478 F. App'x 550, 558 (11th Cir. 2012); *SEC v. BIH Corp.*, 2:10-cv-577, 2014 U.S. Dist. LEXIS 172122, at *11 (M.D. Fla. Dec. 12, 2014); *SEC v. Yun*, 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001).

## III. ANALYSIS.

Pursuant to Rule 55(b)(2), Federal Rules of Civil Procedure, the Court may enter default judgment against Relief Defendants. By failing to answer the Complaint, Relief Defendants are deemed to have admitted the allegations against Martin and that they have no legitimate claim to the stock sale proceeds. Given Martin's fraudulent scheme, and the use of Relief Defendants as a conduit to receive and disburse the stock sale proceeds held by each Relief Defendant, disgorgement is an appropriate remedy. Stuart Soffian's declaration provides a reasonable approximation of the disgorgement amount for each Relief Defendant. Doc. No. 98-1. Further, because Relief Defendants were mere conduits of and controlled by Martin, prejudgment interest is also appropriate where Martin's scienter was established by the default as well. Soffian's use of the IRS underpayment penalty rate is appropriate. Doc. No. 98-1 at 14.

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **GRANT** the Motion (Doc. No. 98);

2. Direct the Clerk to enter a default judgment in favor of the SEC and against Relief Defendants Am-Pac, Forbes, and FSC on Count XXVIII for unjust enrichment;

3. The SEC is entitled to disgorgement of the stock sale proceeds identified in the Declaration of Stuart Soffian as to each Relief Defendant in the following amounts:

   | | |
   |---|---|
   | Forbes | $853,842.28 |
   | Am-Pac | $52,025.25 |
   | FSC | $36,583.30; |

4. The SEC is entitled to prejudgment interest against Relief Defendants in the following amounts:

   | | |
   |---|---|
   | Forbes | $122,805.44 |
   | Am-Pac | $6,300.71 |
   | FSC | $4,132.72; |

   and

5. Interest shall continue to accrue as provided by law, for which sum let execution issue.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on April 1, 2019.

*[signature]*
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

- 9 -

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties