UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.                                                   Case No. 6:17-cv-1385-Orl-37GJK

JEFFREY D. MARTIN; THOMAS L.
TEDROW; CHRISTIAN T. TEDROW;
TYLER T. TEDROW; BEAUFORT
CAPITAL PARTNERS LLC; ROBERT P.
MARINO; AM-PAC INVESTMENTS,
INC.; FORBES INVESTMENT, LTD.;
FORBES INVESTMENT, LLLP; FCS,
LTD.; FSC LIMITED, LLC; and
STERLING LLC,

    Defendants.
_____

## ORDER

Defendant Jeffrey D. Martin moves to dismiss the claims against him due to insufficient service of process or, alternatively, to quash service of process sent via email. (Doc. 110 ("**Motion**").) Plaintiff Securities and Exchange Commission ("**SEC**") responded (Doc. 111), and Mr. Martin replied (Doc. 114). On review, the Motion is denied.

           **I.**        **BACKGROUND**

On July 27, 2017, the SEC initiated this securities fraud action alleging that Defendants orchestrated and carried out a sweeping pump-and-dump scheme involving a company known as Mainstream Entertainment, Inc. (*See* Doc. 1 ("**Complaint**").) The SEC attempted to serve Mr. Martin with the Complaint through his attorney John Henry

-1-

Schlie on August 18, 2017, but Mr. Schlie had not been retained for purposes of this litigation. (Doc. 103-1.) The SEC then attempted to serve Mr. Martin by locating his last-known address in Orlando, Florida—Mr. Martin had previously refused to provide his address to the SEC when it investigated him in July 2015, and a public records search revealed three associated addresses in the Orlando area. (*See* Doc. 103-2; Doc. 103-5, p. 13.) The SEC's process server visited all three. (*See* Doc. 103-2.) At the first, the individual—later revealed as one of Mr. Martin's employees, Karen Aalders—refused to identify herself and said that Mr. Martin "resides overseas." (*Id.* ¶ 3.) At the second, Mr. Martin's son, Justin Martin, refused to identify himself and said he did not know Mr. Martin, but he later said Mr. Martin was his father and that he lived in Hong Kong. (*Id.* ¶ 5.) At the third, another family member of Mr. Martin, Duane Martin, said Mr. Martin lived in Hong Kong. (*Id.* ¶ 6.)

From this information, the SEC shifted its focus and attempted to serve Mr. Martin in Hong Kong. (*See* Doc. 103-3.) In October 2017, the SEC initiated a formal request to the Chief Secretary for Administration, the Central Authority in Hong Kong under the Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361 ("**Hague Convention**"), to serve Mr. Martin at a Hong Kong address he disclosed during the SEC's investigation. (*Id.*; Doc. 103-4; Doc. 103-5, p. 15.) On December 13, 2017, the Chief Secretary advised that it could not serve Mr. Martin at the address provided because a different family lived there who did not know Mr. Martin. (Doc. 103-6.)

The SEC then turned to other means of service. The SEC looked for foreign counsel

in Hong Kong to locate and personally serve Mr. Martin in Hong Kong. (*See* Doc. 103-7.) After identifying multiple firms in Hong Kong with the requisite experience, the SEC hired Dentons, LLP ("**Dentons**"), a firm with offices in Hong Kong, in April 2018. (*Id.*) Dentons began searching for Mr. Martin and several months later identified an apartment where it appeared Mr. Martin resided with his wife. (*Id.* ¶ 7.) Dentons confirmed this by providing a photo of Mr. Martin to the security guard of the building. (*Id.* ¶ 8.) But after several weeks of surveilling the address, Dentons was unable to locate Mr. Martin. (*Id.* ¶¶ 9–11.)

Next, in April 2019, the SEC accessed Mr. Martin's public Facebook and LinkedIn profiles that contained photographs of Mr. Martin, his son Justin Martin, and other information to confirm that the pages belonged to the same Mr. Martin. (Doc. 103-2, ¶¶ 10–11.) According to these social media accounts, Mr. Martin was in China, and his last posts were in April 2019. (*Id.*) The SEC also sent an email to Mr. Martin at his known email address, headlightz99@yahoo.com, and the email did not bounce back, indicating it was still active. (*Id.* ¶ 8; Doc. 103-5, p. 13.)

So on May 3, 2019, the SEC moved for leave to serve Mr. Martin by email, Facebook, and LinkedIn.[1] (Doc. 102; Doc. 103 ("**Alternative Means Motion**").) The SEC served the Alternative Means Motion on Mr. Martin by email at headlightz99@yahoo.com, which again did not bounce back. (Doc. 105-1; Doc. 105-2.)

---

[1] The SEC originally moved *ex parte* for leave to serve Mr. Martin by alternate means on May 2, 2019 (Doc. 102), but counsel for the SEC inadvertently emailed a copy of that motion to Mr. Martin (Doc. 103, p. 1 n.1). So the SEC amended that motion the following day to add a certificate of service. (*See* Doc. 103, p. 1 n.1.)

When the SEC realized Mr. Martin's Facebook and LinkedIn pages were deactivated almost immediately following the original service of the motion, the SEC notified the Court and reiterated its request to serve Mr. Martin using his email address based on the evidence that he monitors that email address and is trying to evade service by deactivating his accounts. (Doc. 105; Doc. 105-2.)

On May 8, 2019, U.S. Magistrate Judge Gregory J. Kelly granted the Amended Means Motion. (Doc. 106 ("**Alternative Means Order**").) In so doing, Magistrate Judge Kelly found: (1) service on Mr. Martin via email, Facebook, and LinkedIn does not violate international agreement; (2) such service meets due process requirements as it is reasonably calculated to apprise Mr. Martin of the pendency of the action and afford him an opportunity to present his objections; and (3) the email address the SEC seeks to use continues to be monitored and does not bounce back emails. (*Id.* at 6.) Thus, he concluded that service via email, Facebook, and LinkedIn under Federal Rule of Civil Procedure 4(f)(3) is sufficient. (*Id.* at 7.) That same day, the SEC served Mr. Martin via email at headlightz99@yahoo.com in accordance with the Alternative Means Order. (Doc. 107.) The email required either an answer to the complaint or a motion under Rule 12 within twenty-one days of service. (Doc. 111, p. 5; Doc. 111-4.)

Exactly twenty-one days later, on May 29, 2019, Mr. Martin moved to dismiss for insufficient service of process under Rule 12(b)(5) or to quash the purported service, arguing that service via email was improper because it is not authorized by Rule 4(f)(3) and violates due process. (Doc. 110.) Briefing complete (Docs. 111, 114), the matter is ripe.

## II.   LEGAL STANDARDS

Under Rule 12(b)(5), a defendant may move to dismiss based on insufficient service of process. Fed. R. Civ. P. 12(b)(5). The requirements for service of process appear in Rule 4(f), which provides three methods for service of process on individuals in foreign countries. *See* Fed. R. Civ. P. 4(f). Under Rule 4(f)(3), an individual may be served outside the United States "by any . . . means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). So "[s]ervice may be accomplished under Rule 4(f)(3) as long as it is (i) ordered by the court, and (ii) not prohibited by international agreement." *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla. 2011). The authorization for alternative service of process under Rule 4(f)(3) is within the discretion of the district court. *Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 5-civ-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 21, 2007).

One international agreement concerning service is the Hague Convention. *See* Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents, No. 15, 1965, 20 U.S.T. 361, art. 1 (noting that the Hague Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad"). Signatories to the Hague Convention "shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States," and the Hague Convention sets forth the procedure for effecting service through the Central Authority. *Id.* at arts. 2–6. Relevant here, the United States and China are both signatories to the Hague Convention, but China objects to Article 10

of the Hague Convention, so service via regular mail is not permitted in China.[2] *See Int'l Designs Corp., LLC v. Qingdao Seaforest Hair Prods. Co., Ltd.*, No. 17-60431-CIV-MORENO, 2018 WL 2364297, at *12 n.3 (S.D. Fla. Jan. 4, 2018).

Additionally, any authorized alternative means of service under Rule 4(f)(3) must satisfy due process. *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-cv-366-Orl-40KRS, 2016 WL 7137699, at *5 (M.D. Fla. Nov. 29, 2016). "To meet the due process requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at *6 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)); *see also Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 314 (1950).

### III.  ANALYSIS

Mr. Martin argues that service by email was improper, warranting dismissal of the

---

[2] Specifically, Article 10 states:

> Provided the State of destination does not object, the present Convention shall not interfere with—(a) the freedom to send judicial documents, by postal channels, directly to persons abroad; (b) the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination; (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination.

Hague Convention for the Service Abroad of Judicial and Extrajudicial Documents, No. 15, 1965, 20 U.S.T. 361, art. 10.

claims against him, because: (1) service by email is not authorized under Rule 4(f)(3) under the circumstances here ("**Rule 4(f)(3) Argument**"); and (2) service by email violates Mr. Martin's due process rights because it is not reasonably calculated, under all the circumstances, to apprise Mr. Martin of the pendency of the action and afford him the opportunity to present his objections ("**Due Process Argument**"). (Doc. 110.) The Court addresses each argument in turn.

### A.     Rule 4(f)(3) Argument

First, Mr. Martin argues service via email is unauthorized under Rule 4(f)(3) because China, where Mr. Martin resides, has objected to Article 10 of the Hague Convention and, thus, service by email is prohibited. (*See* Doc. 110, pp. 4–5.) The Court is not persuaded. China objects to service "via postal channels" and other methods provided in Article 10 of the Hague Convention, not to service via email. *See Int'l Designs Corp., LLC*, 2018 WL 2364297, at *12 n.3. As China has not expressly objected to service via email, courts may authorize such service in China under Rule 4(f)(3) because it is not prohibited under any international agreement. *See, e.g.*, *Kipu Sys., LLC v. Zencharts*, LLC, No. 17-24733-Civ-WILLIAMS/TORRES, 2018 WL 8264634, at *2 (S.D. Fla. Mar. 29, 2018) (agreeing with "the reasoning of several courts that have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email" (quoting *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015)); *Fisher v. Petr Konchalovsky Found.*, No. 15-cv-9831(AJN), 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10,

2016) (finding that a country's objection to Article 10 of the Hague Convention is not an express rejection of service by email and citing other cases finding the same).

Although some courts have concluded that objections to Article 10 preclude service by email in the objecting country under certain circumstances as Mr. Martin suggests, *see, e.g.*, *Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *1–2 (N.D. Cal. May 13, 2008),[3] this Court is more persuaded by the majority of courts that have concluded otherwise, discussed above and in the Alternative Means Order. (*See* Doc. 106, p. 5 (citing cases stating that service by email is not prohibited under the Hague Convention or other international agreement)).[4] Thus, the Court finds that service by

---

[3] What's more, this and other cases cited by Mr. Martin to support his Rule 4(f)(3) Argument are distinguishable. (*See* Doc. 110, pp. 4–5.) For example, in *Agha*, the court did not authorize service via email on defendants residing in Germany. 2008 WL 2051061, at *1–2. There, unlike here, the plaintiff never attempted to serve the defendants at a known address via the Hague Convention before requesting leave to serve via email, and the defendants never responded to the email service. *Id.* at *1. However, the *Agha* court noted that "numerous courts have authorized service by e-mail or facsimile under a variety of factual settings" and that service via email may be appropriate in other circumstances where policy or other reasons justify its use even when a country is a member of the Hague Convention and has objected to Article 10. *See id.* at *2. Additionally, in *Compass Bank v. Katz*, 287 F.R.D. 392, 395 (S.D. Tex. Sept. 27, 2012), the court found that an alternative means of service was not appropriate because the plaintiff had not used sufficient diligence in attempting to discover the defendants address. *Id.* at 395–96. Not so here.

[4] *See, e.g.*, *Patrick's Rest., LLC v. Singh*, No. 18-cv-764, 2018 WL 5307839, at *6 (D. Minn. Oct. 26, 2018) (considering service via email in India, which has objected to Article 10, and finding that "service via email is not contemplated by Article X, and has not been otherwise prohibited by international agreement"); *Codigo Music, LLC v. Televisa, S.A. de C.V.*, No. 15-CIV-21737-WILLIAMSON/SIMONTON, 2017 WL 4346968, at *10 n.6 (S.D. Fla. Sept. 29, 2017) (collecting cases finding that "service by email is not prohibited by the Hague Convention"); *Chanel, Inc. v. Acheterchanel.com*, No. 12-CV-21854, 2012 WL 3544844, at *4–5 (S.D. Fla. Aug. 16, 2012) (considering service by email in China and finding that "[s]ervice by e-mail is not prohibited under international agreement in this case" where the defendant's address in China was unknown).

email on Mr. Martin to an address known and operational was properly authorized under Rule 4(f)(3), in these circumstances where the SEC attempted to serve Mr. Martin for years by other means and consistent with the Hague Convention and evidence exists of Mr. Martin's attempts to evade service. (*See* Doc. 106, pp. 5–6); *see also, e.g.*, *Kipu Sys., LLC*, 2018 WL 8264634, at *2 (permitting service via email in Bulgaria despite its objection to Article 10 where the "[d]efendants' addresses are known and operational" and "given the circumstances presented"). The Rule 4(f)(3) Argument is rejected.

### B. Due Process Argument

Second, Mr. Martin argues that service via email failed to satisfy the due process requirements because the SEC failed to show that Mr. Martin does business online or that he regularly communicates via the email address used to serve him. (Doc. 110, pp. 5–7.) Rather, Mr. Martin contends that his email address was monitored by a friend in Hong Kong and that communications via Yahoo mail are blocked in mainland China and cannot be accessed there. (*Id.* at 7.) So Mr. Martin asserts that service via email was not reasonably calculated to apprise him of the pendency of the action and afford him an opportunity to object. (*Id.*) But under the circumstances—and considering Mr. Martin's filing of the Motion in response—the Court finds the due process requirements satisfied.

To satisfy due process, the means of service "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Taser Int'l, Inc.*, 2016 WL 7137699, at *6 (quoting *Rio Props., Inc.*, 284 F.3d at 1015). For service via email, like here, many courts have found that such service satisfies due process under certain

circumstances. *See id.*; *Rio Props., Inc.*, 284 F.3d at 1017–18; *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692–93 (S.D. Fla. 2012). For example, due process is satisfied for service via email when the email address is valid and active, when emails sent to it don't bounce back, or when delivery notifications are provided. *See, e.g.*, *Stat Med. Devices*, 2015 WL 5320947, at *1 (due process satisfied where email address is "valid and active"); *Abercrombie & Fitch Trading Co. v. 2cheapbuy.com*, No. 14-60250-CIV-ROSENBAUM, 2014 WL 11706443, at *1–2 (S.D. Fla. Mar. 5, 2014) (due process satisfied where email address was "operation and . . . a reliable means of communicating with Defendants"); *Chanel v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695, at *10–11 (S.D. Fla. Apr. 29, 2010) (finding that "e-mails that did not bounce back presumptively reached Defendant" and citing cases finding the same). Further, when a defendant is attempting to evade service, email may be the only means of effecting service of process. *Rio Props, Inc.*, 284 F.3d at 1018 (finding that the district court "performed the balancing test [of the limitations and benefits of email service] admirably" in authorizing email service where the plaintiff "presented the district court with its inability to serve an elusive international defendant, striving to evade service of process").

Here, the Court finds service on Mr. Martin at headlightz99@yahoo.com met the due process requirements as it was a valid and active email address that Mr. Martin continued to monitor, either directly or indirectly. Specifically, the evidence reflects that Mr. Martin provided this email address to the SEC and has maintained it since 2015. (Doc. 103-5.) He also provided this email address as his contact email address for his LinkedIn profile, which was active through May 3, 2019, when the SEC served the Alternative

Means Motion. (Docs. 111-1–111-3.) Additionally, Mr. Martin provided an affidavit from Cheung Pui Lam, a friend whom Mr. Martin asked to monitor that email address while he was traveling to mainland China where the email account was blocked. (*See* Doc. 110-1.) And although Mr. Lam asserts that he shut down the email account after receiving the email containing the Alternative Means Motion because he was suspicious of hacking, the SEC's process server emailed the summons, complaint, Alternative Means Motion, and Alternative Means Order six days later, and the email did not bounce back. (*See id.* ¶ 3; Doc. 111-4.) Notably, Mr. Lam did not state that he did not read the email or notify Mr. Martin about it. (*See* Doc. 110-1.) As the emails sent to headlightz99@yahoo.com including the service of process did not bounce back, the Court concludes that they reached their destination. *See Chanel*, 2010 WL 1740695, at *2 (concluding that emails sent to an email address that did not bounce back presumably reached their destination). Based on these emails, Mr. Martin was sufficiently notified of the case against him.

Beyond this, service via email appears to have notified Mr. Martin of the pendency of the action and afforded him an opportunity to present his objections because he filed the Motion. (*See* Doc. 110.) Indeed, Mr. Martin filed the Motion exactly twenty-one days after the SEC served him via email with a summons that required an answer or Rule 12 motion within twenty-one days of service. (*See* Doc. 111-4.) Thus, the Court finds that service via email as authorized by Magistrate Judge Kelly in the Alternative Means Order was proper under Rule 4(f)(3) and satisfied due process as reasonably calculated, under all the circumstances, to apprise Mr. Martin of the pendency of the action and afford him an opportunity to present his objections. (*See* Doc. 106); *Taser Int'l, Inc.*, 2016 WL 7137699,

at *6; *see also Rio Props, Inc.*, 284 F.3d at 1018 (finding email service proper on evidence that the plaintiff tried unsuccessfully to serve an "elusive international defendant"). The Motion is denied.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Specially Appearing Defendant Jeffrey D. Martin's Motion to Dismiss for Insufficient Service of Process or, in the Alternative, Motion to Quash Service and Memorandum of Law (Doc. 110) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 15, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record